IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JAMES PRESTON POWELL, Jr., | ) | CIVIL ACTION 4:12-cv-2085-MGL-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on March 16, 2010, alleging an inability to work since October 29, 2009. His application was denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. On June 3, 2011, a video hearing was held before an

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") who issued an unfavorable decision on June 16, 2011. (Tr. 15-22). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on July 25, 2012.

## FACTUAL BACKGROUND

The Plaintiff was born on March 3, 1970, and was 39 years of age on the alleged onset date. Plaintiff has at least a high school education and past relevant work as a maintenance worker and a steel worker.

## DISABILITY BACKGROUND

The Plaintiff's arguments consist of the following, quoted verbatim:

> (1) The ALJ violated the Commissioner's rules for evaluating and weighing opinion evidence.
>
> (2) The Commissioner's decision should be reversed with instructions to award Plaintiff the benefits to which he is legally entitled.

(Plaintiff's brief).

In the decision of June 16, 2011, the ALJ found the following:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since October 29, 2009, the alleged onset date (20 CFR 404.1571 *et. seq.*).
>
> 3. The claimant has the following severe impairments: back disorders, headaches, and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary[2] work as defined in 20 CFR 404.1567(a) except that the claimant cannot climb ladders, ropes, or scaffolds; can occasionally perform all of the other postural movements; must avoid all exposure to hazards; and must be able to alternate positions at will.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on March 3, 1970 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2009, through the date of this decision (20 CFR 404.1520(g)).

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 CFR §404.1567(a).

3

(Tr. 17-22).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. *Myers v. Califano*, 611 F.2d 980, 982-83 (4th Cir. 1988); *Richardson v. Califano*, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether

4

the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 20 C.F.R. § 404.1505(a); *Blalock*, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a *prima facie* showing of disability by showing she was unable to return to his past relevant work. *Grant v. Schweiker*, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can

perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id*. at 191.

## ARGUMENTS AND ANALYSIS

### Treating Physician's opinion

Plaintiff argues that the ALJ erred in disregarding the statements of Dr. Triana, his long-term treating orthopaedic physician, in violation of the treating physician rule. Plaintiff contends that the ALJ disregarded the opinions of Dr. Triana and his physician's assistant (PA), Dean Huiet, while according significant weight to the opinions of the State agency medical consultants who did not review the medical evidence after April 28, 2010, and neglected to identify Dr. Triana's multiple statements regarding his physical limitations. Further, Plaintiff avers that the medical findings by Dr. Mikol, Dr. Grant, and Dr. Glaser (two orthopedic specialists and one pain specialist) served to support the restrictions issue by Dr. Triana and were in part the basis for which Dr. Triana issued them.

The Commissioner argues that the ALJ's decision is supported by substantial evidence. Defendant asserts that the ALJ reasonably considered and accorded partial weight to Dr. Triana's various opinions regarding Plaintiff's limitations and work status. Defendant asserts that the majority of the statements and opinions by Mr. Huiet and Dr. Triana are related to Plaintiff's ability to return to heavy work as opposed to all work.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is

given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(d)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2 31, 35 (4th Cir. 1992).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(d)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Furthermore, 20 C.F.R. § 404.1527(d)(2) states: "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96-2p requires that "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear

7

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

In the ALJ's decision, he found the following with regard to the medical opinions the State agency medical consultants and of Dr. Triana and Mr. Huiet referenced as Exhibit 9F and 14F:

> The undersigned gives significant weight to the opinions of the State agency medical consultants at Exhibits 7F and 12F. Although these opinions are consistent with the weight of the medical evidence of record, the claimant has been reduced to sedentary work with additional limitations to incorporate some of the claimant's hearing testimony and inferences from Exhibits 9F and 14F to give the claimant the benefit of the doubt.
>
> The undersigned gives only partial weight to the opinion at Exhibits 9F and 14F because the determination of whether an individual is disabled is reserved to the Commissioner. Exhibit 9F is consistent with the residual functional capacity assessment above because the claimant cannot return to his past relevant work, but the evidence does not support a finding that the claimant cannot attend work on a regular basis.

(Tr. 20).

Thus, the ALJ gave little weight to Dr. Triana's opinion that Plaintiff was not capable of performing any work. (Tr.19). Additionally, the ALJ did not mention Dr. Triana by name or the fact that he is considered a specialist. The ALJ did not discuss his basis for discounting Dr. Triana's opinions or that of PA Huiet while stating the boiler plate language that the determination of whether an individual is disabled is reserved to the Commissioner. (*Id.*). It appears the ALJ referenced Dr. Triana's records only couple of other times in the decision. For example, he stated that "[i]n July 2010, the claimant reported constant, unrelenting lower back pain, but his doctor noted that his most recent MRI showed mild findings and expressed uncertainty as to the cause of the claimants' alleged pain (Exhibit 9F)." (*Id.*). The ALJ referenced Dr. Triana's reports by exhibit number when he stated that "[i]n July 2010, the claimant's doctor indicated that objective findings did not explain the

8

claimant's alleged severe lower back pain. In August 2010, the same doctor noted that the claimant's pain is tolerable if he restricts his activities to a sedentary level with no lifting, pushing, pulling, bending or sitting for long periods of time." (*Id.*).  However, the ALJ did not discuss Dr. Triana's other findings and perform the proper analysis. For instance, on February 25, 2010, Dr. Triana referred Plaintiff to Dr. Glaser for evaluation and recommendations due to the results of the CT myelogram revealing a very large osteophyte at C2 on the right side and significant impingement on the exiting nerve root and not knowing "how to address the large spur or disc at this level." (Tr. 346).  Plaintiff underwent surgery for a C2-3 fusion. On May 27, 2010, Dr. Triana noted that Plaintiff was having pain at the base of his neck and that the improvement right after surgery "may well have been secondary to his pain medication he was taking at the time." (Tr. 343). Dr. Triana noted that "I really don't have the impression that any more aggressive intervention is going to change the pain in his back and hopefully the pain in his neck and shoulder areas is going to improve given more time. It has only been 6 weeks since his surgery." (*Id.*).  Plaintiff was instructed to stay out of work and restrict his activities from any heavy lifting, pushing or pulling. (*Id.*). On August 19, 2010, Dr. Triana noted that the repeat MRI of his lumbar spine showed some facet arthritis at L4-5 and L5-S1 with some neuroforamenal narrowing, especially at the L5-S1 level. The CT myelogram revealed a definite neuroforamenal spur off the facet at the L5-S1 level and bilateral facet arthritis with neuroforamenal narrowing at the L4-5 levels. (Tr. 341). Dr. Triana continued to keep him out of work. On December 23, 2010, Dr. Triana noted that Dr. Glaser had a similar opinion that Plaintiff has some early degeneration of his lumbar discs but that there is no guarantee that surgical intervention would solve his problems or make him more functional. (Tr. 338). Dr. Triana stated that he would hold off on any surgery. Dr. Triana concluded as follows:

> I would recommend that he not return to any type of work that requires lifting, pushing, or pulling greater than 20 lbs, that he is not [to] engage in any activity that requires bending at the waist to the floor of a repetitive nature or any climbing or crawling on a repetitive scale. Also sitting in vibratory vehicles is going to be uncomfortable for any extended period of time. He may very well be able to engage in activities on an intermittent daily basis. He will find he will have good days and bad days. It is very difficult to be employable when you can't be depended upon for 8 hours a day, 5 days a week.
>
> He is not going to be able to return to work in my opinion at this point and I'm not sure he is going to be able to be employed at any other occupation with these restrictions. The most important issue is that there is no further medical or surgical treatment that is going to change his symptoms or his condition at this time. He gets by with minimal medication and we will keep him on his present medications of Vicodin, Xanax, Cymbalta and an occasional Fioricet for his headaches.

(Tr. 338).

On April 21, 2011, Dr. Triana noted that Plaintiff returned for a follow-up of his lumbar disc disease and things had not changed with his pain being tolerable with medication and he is careful about his activities as he is "very restricted in what he can do." (Tr. 337). Dr. Triana concluded that "I don't see any surgical intervention that is going to make him more exercise or employment tolerable." (*Id*.).

The ALJ did not discuss the fact that Dr. Triana was Plaintiff's treating orthopaedist. In addition, the ALJ did not note that Dr. Triana's findings were consistent with Dr. Glaser of MUSC. The ALJ stated that he was giving great weight to the State agency consultants without explaining or conducting the proper analysis concerning Dr. Triana. The ALJ did not conduct a proper analysis of the treating and consulting physicians' opinions. There is no analysis of the treatment relationship and history of Plaintiff and Dr. Triana, his treating specialist. No other physician had the type of treatment history with Plaintiff as Dr. Triana. In summary, it is recommended that this

case be remanded to allow the fact finder to evaluate the opinions of the treating physician under the regulatory standards set forth in § 404.1527(c). To the extent that deference is not provided to the opinions of the treating physician, the ALJ must evaluate the opinions under the § 1527(c) standards and articulate good reasons for rejecting the treating physician's opinions.  Proper application of the Treating Physician Rule may have a significant impact on the Commissioner's determination of severe impairments, credibility, the RFC, and on the availability of work for Plaintiff in the national economy at Step Five. Since the ALJ's discussion of Dr. Triana's opinion failed to comply with the Social Security Regulations, it is recommended that this action be remanded for proper consideration of the treating specialist's opinion.  Once the ALJ conducts a proper analysis with respect to the treating physicians' opinions, he should reassess Plaintiff's credibility and RFC for a proper review if the issues are not rendered moot.[3]

**Whether to Reverse or Remand**

Plaintiff asks the court to remand for an immediate award of benefits. The Defendant objects to this disposition. The court has the authority to affirm, modify, or reverse the decision of the ALJ, "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). "Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision" pursuant to Section 405(g). *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir.1971). While remand is the norm, it is not appropriate where "further proceedings would serve no useful purpose," *Olson v. Shalala*,

---

[3] In light of this court's recommendation that this matter be remanded for further consideration, the court need not address any remaining issues, as they may be rendered moot on remand.

48 F.3d 321, 323 (8th Cir.1995), such as where "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994); *see also Smith v. Astrue*, No. 3:10–66–HMH–JRM, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) ("Whether to reverse and remand for an award of benefits or remand for a new hearing rests within the sound discretion of the district court.") (*citing Edwards v. Bowen*, 672 F.Supp. 230, 237 (E.D.N.C.1987)). Plaintiff asks the court to remand for an immediate award of benefits. Such a request is only granted where the court concludes it is impossible for the ALJ to find that Plaintiff is not entitled to DIB. *Good v. Astrue*, 775 F.Supp.2d 840, 852 (D.S.C.2010). Because the court does not have sufficient basis from which to draw such a conclusion, remand is appropriate here. Accordingly, it is recommended that this case be remanded for further proceedings consistent with the above reasoning.

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented.

Accordingly, IT IS RECOMMENDED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

|  |  |
|---|---|
|  | s/Thomas E. Rogers, III |
| December 17, 2013 | Thomas E. Rogers, III |
| Florence, South Carolina | United States Magistrate Judge |